UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DENNIS NIELSON,<br><br>                  Petitioner,<br><br>v.<br><br>KEITH YORDY, Warden of Idaho State<br>Correctional Institution,<br><br>                  Respondent. | Case No. 1:14-cv-00236-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Dennis Nielson's Petition for Writ of Habeas Corpus, challenging his Ada County conviction of lewd conduct with a minor under the age of sixteen. (Dkt. 1.) This case was previously stayed and has since been reopened. (Dkt. 15 & 18.)

The Petition is now fully briefed. (Dkt. 20 & 21.) The Court takes judicial notice of the records from Petitioner's state court proceedings, lodged by Respondent on September 17, 2014, and April 22, 2015. (Dkt. 13 & 19.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R.

**MEMORANDUM DECISION AND ORDER - 1**

7.1(d). Accordingly, the Court enters the following Order dismissing the Petition in part, denying the Petition in part, and dismissing this case with prejudice.

## BACKGROUND

Petitioner was charged in the Fourth Judicial District Court in Ada County, Idaho, with lewd conduct with a child under the age of sixteen, in violation of Idaho Code § 18-1508. Although Petitioner chose to represent himself during some of the pretrial proceedings, he was represented by counsel "[d]uring most of the pretrial process and during the entire trial." (State's Lodging D-11 at 1.) At a pretrial conference, Petitioner informed the trial court that he wanted a new attorney and was allowed to explain, at length, why he believed that his current counsel was not adequately representing Petitioner's interests. (State's Lodging A-3 at 10-43.) After Petitioner and defense counsel both addressed the court, the trial court determined that defense counsel had represented Petitioner ably and, therefore, that if Petitioner wanted an attorney to represent him, it would be his current counsel. (*Id*. at 43-46.)

At the same hearing, Petitioner made several statements to the trial court that he might be suffering from some type of mental illness. Petitioner told the judge that in the past year he "started to have psychotic events" and, as a result, gave his ex-wife a power of attorney.[1] (*Id*. at 15.) Petitioner did not know how long the psychotic events were taking place and that he had never "been any through [sic] psychiatric investigation." (*Id*.) Petitioner did state that he had been arrested because of these events, that he had

---

[1]     Petitioner's ex-wife, a witness for the state, testified at trial regarding Petitioner's flight to evade prosecution for the instant offense, which the state presented as evidence of a guilty conscience.

**MEMORANDUM DECISION AND ORDER - 2**

been treated for "it" in the county jail, and that his memory was poor. (*Id*. at 15-16.) The trial court asked defense counsel, "Do you have any reason to believe from your conversations with [Petitioner] and your experiences in dealing with individuals who are, at times, mentally ill or have moments where they are having difficulty with their mental illness—do you have any—have you had any difficulty with him in understanding and carrying on conversations with him in understanding and carrying on conversations, rational and in-depth conversations?" (*Id*. at 34.) Counsel responded, "No, Your Honor. There is no question in my mind he is competent to proceed today." (*Id*.)

Petitioner told the court that he had been placed in the prison psychiatric facility and was prescribed medication, which he took until he determined that it was not "the medication that I need." (*Id*. at 39.) Petitioner stated that after some amount of time in that facility, "they let me out of there because they said I wasn't crazy." (*Id*.) Petitioner continued: "I wasn't a danger to myself or others, which is what—only their evaluation is for, but I had some psychotic break and they took me there and that's that." (*Id*.) The trial court noted to defense counsel that, if counsel were to continue to represent Petitioner, "there probably needs to be some inquiry of the psychiatric unit there at the prison." (*Id*. at 42.) Counsel agreed.

The trial court concluded, based on its discussions with Petitioner, that Petitioner was competent:

> The court will find that, first and foremost, our discussion today has been rational, and certainly, [Petitioner] is competent, has understood the court's questions and responded appropriately to questions asked of him. If there

**MEMORANDUM DECISION AND ORDER - 3**

> are psychological issues, they have not been demonstrated
> here.

(*Id*. at 43.)

Having found that Petitioner was competent and was not entitled to substitute counsel, the trial court went on to discuss with Petitioner all of the disadvantages he would face if he chose to represent himself. (*Id*. at 48-58.) Following this colloquy, the trial court held that Petitioner was competent to waive his right to counsel and to represent himself, and that Petitioner's decision to do so was voluntary and intelligent:

> [Y]our decision to represent yourself is taken with fully knowledge of the advantages, the disadvantages.
>
> Certainly, I can find you're competent. The fact that this psychiatric hospitalization, the fact that you've been released back into the maximum facility—maximum security facility does not cause this court to believe that you are mentally ill, both in your very competent and very clear understanding of these proceedings, as well as your contact with your lawyer, I can't find that there is—that mental illness is affecting your decision here or taking away your competence.

(*Id*. at 58-59.) The trial court ordered Petitioner's former counsel to continue, as standby counsel only, for the time being. (*Id*. at 59.)

On the day of trial, Petitioner requested a continuance and asserted that "he was diagnosed with a serious mental illness, schizophrenia. [The diagnosis] was made by Dr. Kruzich, that [Petitioner] suffers from this illness. That [Petitioner] is not competent to prepare and assist in his own defense and cannot represent himself." (*Id*. at 71-72.) Petitioner did not provide evidence from Dr. Kruzich or otherwise to support his

**MEMORANDUM DECISION AND ORDER - 4**

allegations of incompetence, and the court denied the motion for a continuance. (*Id.* at 72.)

Prior to trial, the state moved to introduce evidence (if necessary in rebuttal) of Petitioner's prior sexual misconduct with children, pursuant to Idaho Rule of Evidence 404(b), as evidence of a common scheme or plan.[2] (State's Lodging A-1 at 24-26, 38-39.) Over defense counsel's objection and argument,[3] the trial court granted the state's motion in limine and held that, if Petitioner took the stand and denied the allegations, his two previous victims could testify in rebuttal. (State's Lodging A-3 at 3, 138-39, 140-42.) Petitioner did not testify at trial, and, therefore, neither did the previous victims.

The jury found Petitioner guilty, and he received a unified sentence of 50 years in prison with 30 years fixed. (*Id.* at 359.) The Idaho Court of Appeals affirmed the conviction and sentence, and the Idaho Supreme Court denied review. (State's Lodging B-4 & B-9.)

Petitioner then filed a petition for state postconviction relief, asserting several claims of ineffective assistance of counsel. (State's Lodging C-1 at 7-21, 141-49.) The

---

[2]    Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

[3]    When the state initially broached the subject of Rule 404(b) evidence, Petitioner was represented by counsel, who objected on Petitioner's behalf. Though Petitioner represented himself for a period of time afterwards, the argument and decision on the state's request did not occur until Petitioner was again represented by counsel.

**MEMORANDUM DECISION AND ORDER - 5**

state district court dismissed the petition, and Petitioner appealed. (*Id.* at 264-67, 360-73, 377-79.) While the appeal was pending, Petitioner filed a successive petition for state postconviction relief, which was also dismissed. (State's Lodging C-3 at 6-9, 420.) Petitioner's appeal from this dismissal was consolidated with his pending appeal from the dismissal of his first postconviction petition. (State's Lodging D-5.) The Idaho Court of Appeals affirmed both dismissals, and the Idaho Supreme Court denied review. (State's Lodging D-11 & D-14.)

In his federal Petition, Petitioner asserts the following claims:

| | |
|---|---|
| Claim 1: | Ineffective assistance of trial counsel based on counsel's failure to request a competency evaluation. |
| Claim 2: | Ineffective assistance of trial counsel based on counsel's failure to preserve the Rule 404(b) issue for appeal by making an offer of proof as to what Petitioner's testimony would be if he chose to testify at trial. |
| Claim 3: | Ineffective assistance of postconviction counsel for failing to raise Claim 2 in postconviction proceedings. |
| Claim 4: | Ineffective assistance of direct appeal counsel based on counsel's failure to challenge the trial court's decision to admit the Rule 404(b) evidence in rebuttal if Petitioner took the stand. |
| Claim 5: | Violation of Petitioner's due process right not to be tried while incompetent. |

(Dkt. 1 at 3-4.)[4]

---

[4]     Respondent has identified and construed these claims from the Petition and assigned the above numeric designations to them. The Court agrees with, and Petitioner has not challenged, Respondent's characterization and labeling of the claims.

**MEMORANDUM DECISION AND ORDER - 6**

Respondent now argues that most of Petitioner's claims are procedurally defaulted, that Claim 3 is not cognizable, and that Claim 1 fails on the merits. For the reasons that follow, the Court agrees.

## CLAIM 1 MUST BE DENIED ON THE MERITS

### 1.   Standard of Law for Merits Review

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Although a federal habeas court reviews the state court's "last reasoned decision" in determining whether a petitioner is entitled to relief. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), a state court need not "give reasons before its decision can be deemed to have been 'adjudicated on the merits'" under § 2254(d). *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

**MEMORANDUM DECISION AND ORDER - 7**

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then

**MEMORANDUM DECISION AND ORDER - 8**

relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (internal citation omitted). That Court recently reaffirmed that to be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (internal quotation marks omitted).

Though the source of clearly established federal law must come from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual

determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999 (9th Cir. 2014).

When a petitioner contests the reasonableness of the state court's factual determinations, the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 130 S. Ct. 841, 849 (2010).

The United States Court of Appeals for the Ninth Circuit has identified five types of unreasonable factual determinations that result from procedural flaws that occurred in state court proceedings: (1) when state courts fail to make a finding of fact; (2) when courts mistakenly make factual findings under the wrong legal standard; (3) when "the fact-finding process itself is defective," such as when a state court "makes evidentiary findings without holding a hearing"; (4) when courts "plainly misapprehend or misstate the record in making their findings, and the misapprehension goes to a material factual issue that is central to petitioner's claim"; or (5) when "the state court has before it, yet apparently ignores, evidence that supports petitioner's claim." *Taylor v. Maddox*, 366 F.3d 992, 1000-01 (9th Cir. 2004). State court findings of fact are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**MEMORANDUM DECISION AND ORDER - 10**

This strict deferential standard of § 2254(d) applies to habeas claims except in the following narrow circumstances: (1) where the state appellate court did not decide a properly-asserted federal claim; (2) where the state court's factual findings are unreasonable under § 2254(d)(2); or (3) where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002). In those circumstances, the federal district court reviews the claim de novo. In such a case, as in the pre-AEDPA era, a district court can draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Under de novo review, if the factual findings of the state court are not unreasonable, the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167. Contrarily, if a state court factual determination is unreasonable, or if there are no state court factual findings, the federal court is not limited by § 2254(e)(1). Rather, the federal district court may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray v. Schriro*, 745 F.3d 984, 1000 (9th Cir. 2014).

**2.      Claim 1: Ineffective Assistance of Trial Counsel – Failure to Request a Competency Evaluation**

Petitioner asserts in Claim 1 that trial counsel rendered ineffective assistance by failing to request a competency evaluation.

### A.      *Clearly-Established Law*

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard

**MEMORANDUM DECISION AND ORDER - 11**

for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to

**MEMORANDUM DECISION AND ORDER - 12**

plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner

**MEMORANDUM DECISION AND ORDER - 13**

"must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. As the *Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

When evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Pinholster*, 563 U.S. at 190.

In considering whether Petitioner's trial counsel was ineffective in failing to move for a competency hearing, the Court must also bear in mind the due process standard for competence. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and if he has "a rational as well as factual understanding of the proceedings against him." *Dusky v.*

**MEMORANDUM DECISION AND ORDER - 14**

*United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted); *see also Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial.").

Relevant factors in a competency determination include "a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180. The question of competency "is often a difficult one in which a wide range of manifestations and subtle nuances are implicated." *Id*. Therefore, "[e]ven when a defendant is competent at [one point in the proceedings], a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Id*. at 181.

### B.     *State Court Decision*

In considering Petitioner's claim that trial counsel was ineffective for failing to request a competency evaluation, the Idaho Court of Appeals correctly cited *Strickland v. Washington* as the governing federal law. (State's Lodging D-11 at 5.) The court rejected the claim because Petitioner had not presented any admissible evidence "sufficient to raise an inference that he was incompetent during the criminal proceedings." (*Id*. at 7.)

The court of appeals reasoned:

> First, the evidence submitted in the original post-conviction action does not describe Nielson's mental status at the appropriate time. Second, the mere diagnosis of schizophrenia is insufficient to show incompetence. Third, Nielson

**MEMORANDUM DECISION AND ORDER - 15**

> presented no evidence of his mental condition from a
> qualified expert. Because he has not provided evidence
> showing that he was incompetent at the relevant time, Nielson
> has not shown that his attorney was deficient in failing to
> move for a competency evaluation or that Nielson was
> prejudiced thereby.

(*Id*. at 8) (footnote omitted).

### C. *Petitioner Is Not Entitled to Relief on Claim 1*

The Idaho Court of Appeals did not base its decision either on an unreasonable

application of clearly-established Supreme Court precedent or on an unreasonable factual

determination. *See* 28 U.S.C. § 2254(d). Petitioner has not offered any evidence to

support a conclusion that Petitioner "lack[ed] the capacity to understand the nature and

object of the proceedings against him, to consult with counsel, [or] to assist in preparing

his defense." *See Drope*, 420 U.S. at 171 (1975). Therefore, Petitioner is not entitled to

relief on Claim 1.

## CLAIM 3 IS NOT COGNIZABLE IN
## THIS FEDERAL HABEAS CORPUS ACTION

In Claim 3, Petitioner asserts that his initial state postconviction counsel rendered

ineffective assistance by failing to support a trial ineffectiveness claim based on the

allegedly wrongful admission of the Rule 404(b) evidence. (Dkt. 1 at 4.) However, the

Supreme Court has made clear that a petitioner does not have a federal constitutional

right to the effective assistance of counsel during state postconviction proceedings.

*Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987). Although the Supreme Court

established, in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012), that ineffective assistance of

state postconviction counsel can constitute cause and prejudice to excuse the procedural

**MEMORANDUM DECISION AND ORDER - 16**

default of underlying ineffective assistance claims,[5] the Court has not departed from the rule in *Finley* that there is no independent constitutional right to effective postconviction counsel. Therefore, Claim 3 must be dismissed as noncognizable.

## CLAIMS 2, 4, and 5 ARE PROCEDURALLY DEFAULTED AND SUBJECT TO DISMISSAL

In Claim 2, Petitioner alleges that trial counsel was ineffective for failing to make an offer of proof regarding Petitioner's potential testimony and, therefore, failing to preserve the Rule 404(b) issue. In Claim 4, Petitioner alleges that direct appeal counsel was ineffective for failing to challenge the trial court's decision to allow Rule 404(b) evidence in rebuttal if Petitioner took the stand. In Claim 5, Petitioner asserts that the trial violated his due process rights because he was mentally incompetent to stand trial. For the following reasons, these claims are procedurally defaulted and must be dismissed.

## 1.     Standard of Law Governing Procedural Default

A habeas petitioner must exhaust his or her remedies in the state courts before a federal court can grant relief on constitutional claims. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *Id.* at 845. In a state that has the possibility of discretionary review in the highest appellate court, like Idaho, the petitioner must have presented all of his federal claims at least in a petition seeking review before that court.

---

[5]      *Martinez v. Ryan* will be discussed in more detail below.

*Id.* at 847. "Fair presentation" requires a petitioner to describe both the operative facts and the legal theories upon which the federal claim is based. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996).

The mere similarity between a federal claim and a state law claim, without more, does not satisfy the requirement of fair presentation. *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam). General references in state court to "broad constitutional principles, such as due process, equal protection, [or] the right to a fair trial," are likewise insufficient. *See Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999). The law is clear that, for proper exhaustion, a petitioner must bring his federal claim before the state court by "explicitly" citing the federal legal basis for his claim. *Lyons v. Crawford*, 232 F.3d 666, 669 (9th Cir. 2000), *as amended*, 247 F.3d 904 (9th Cir. 2001).

When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted. *Gray*, 518 U.S. at 161-62. Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has completely failed to raise a claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts; and (3) when the Idaho courts have rejected a claim on an adequate and independent state procedural ground. *Id.*; *Baldwin v. Reese*, 541 U.S. 27, 32 (2004); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

**MEMORANDUM DECISION AND ORDER - 18**

To be an "adequate" state ground, a procedural bar must be one that is "'clear, consistently applied, and well-established at the time of the petitioner's purported default." *Martinez v. Klauser*, 266 F.3d 1091, 1093 (2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). A state procedural bar is "independent" of federal law if it does not rest on, and if it is not interwoven with, federal grounds. *Bennett v. Mueller*, 322 F.3d 573, 581 (9th Cir. 2003).

If a habeas claim is procedurally defaulted, a federal district court cannot hear the merits of the claim unless the petitioner meets one of two exceptions: (1) a showing of adequate legal cause for the default and prejudice arising from the default, or (2) a showing of actual innocence, which means that a miscarriage of justice will occur if the constitutional claim is not heard in federal court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995). Neither an assertion of cause and prejudice nor an assertion of actual innocence under *Schlup* is an independent constitutional claim. Rather, these are federal *procedural* arguments that, if sufficiently established by the petitioner, allow a federal court to consider the merits of an otherwise procedurally-defaulted constitutional claim.

## 2.     Claims 2, 4, and 5 Are Procedurally Defaulted

The simplest manner in which to resolve the exhaustion and procedural default status of Petitioner's federal claims is to review which claims were raised and addressed on the merits in the state court appellate proceedings. On direct appeal, Petitioner argued that (1) Petitioner did not knowingly, voluntarily, and intelligently waive his right to counsel for the period of time during which he represented himself; (2) the trial court

**MEMORANDUM DECISION AND ORDER - 19**

erred by denying Petitioner's request for a continuance; (3) the trial court violated

Petitioner's right to self-representation by ordering that documents be produced to stand-

by counsel; and (4) Petitioner's sentence was excessive. (State's Lodging B-1 & B-3.)

Petitioner does not raise any of these claims in the instant Petition.[6]

In his initial postconviction petition, Petitioner argued that trial counsel was

ineffective in various ways, including by failing to request a competency evaluation.

However, Petitioner acknowledged that trial counsel was *not* ineffective with respect to

the Rule 404(b) and alleged that appellate counsel was ineffective for failing to appeal the

trial court's grant of the state's motion in limine. (State's Lodging C-1 at 148-49.)

In his successive postconviction petition, Petitioner changed his tune and alleged

that trial counsel *was* ineffective with respect to the Rule 404(b) issue, in that trial

counsel did not make an offer of proof as to what Petitioner would say if he testified on

his own behalf. (State's Lodging C-3 at 8.)

In the consolidated appeal from the dismissals of his initial and successive

postconviction petitions, Petitioner raised only two claims: (1) his initial postconviction

claim that Petitioner's trial counsel rendered ineffective assistance by failing to request a

competency evaluation, which is presented as Claim 1 of the Petition and which—as the

---

[6]     One of Petitioner's arguments on direct appeal—that the trial court erred by denying Petitioner's request for a continuance—involved the competency issue. Petitioner asserted that a continuance was necessary because he had placed his competency at issue, but could not have submitted supporting documentation because his medical records had been sent to stand-by counsel instead of to Petitioner. (Dkt. B-1 at 13-14.) This denial-of-continuance claim is related to Claim 5, which alleges that Petitioner was incompetent to stand trial. However, despite the claims' factual interconnectedness, "they are distinct claims with separate elements of proof, and each claim should have been separately and specifically presented to the state courts." *Rose v. Palmateer*, 395 F.3d 1108, 1112 (9th Cir. 2005).

**MEMORANDUM DECISION AND ORDER - 20**

Court has already determined—must be denied on the merits; and (2) his successive

postconviction claim that trial counsel was ineffective in failing to make a sufficient

record to preserve the Rule 404(b) issue, which is presented as Claim 2 of the Petition.

(State's Lodging D-1 & D-8.)

Although Petitioner raised Claim 2 to the state appellate court, the court denied

that claim on an adequate and independent state procedural ground—that claims not

raised in an initial petition for postconviction relief are waived unless there is a sufficient

reason why the claims were not included in the original petition. (State's Lodging D-11 at

6-7.) *See* Idaho Code § 19-4908 ("All grounds for relief available to an applicant under

[the Uniform Post-Conviction Procedure Act] must be raised in his original, supplemental

or amended application. Any ground . . . not so raised . . . may not be the basis for a

subsequent application, unless the court finds a ground for relief asserted which for

sufficient reason was not asserted or was inadequately raised in the original,

supplemental, or amended application.").

Petitioner did not bring Claim 2—ineffective assistance of *trial counsel* for failure

to preserve the Rule 404(b) issue—in his initial postconviction petition. Instead, he

alleged that *direct appeal counsel* should have raised the Rule 404(b) issue. (State's

Lodging C-3 at 148-49.) Because Claim 2 could have been, but was not, included in the

initial postconviction petition, the court of appeals declined to address it. Petitioner has

not brought forth any evidence that the procedural bar of § 19-4908 was not "clear,

consistently applied, and well-established" at the time of the default or that it was

**MEMORANDUM DECISION AND ORDER - 21**

interwoven with federal grounds. *See Klauser*, 266 F.3d at 1093-94 (internal quotation marks omitted); *Bennett*, 322 F.3d at 581.

For the reasons set forth above, Claims 2, 4, and 5 are procedurally defaulted.

### 3.    Petitioner Has Not Established Cause and Prejudice To Excuse the Default of Claims 2, 4, and 5

The Court's conclusion that Claims 2, 4, and 5 are procedurally defaulted does not end the inquiry. As noted previously, a petitioner can avoid dismissal for procedural default if cause and prejudice exist to excuse the default.

### A.    *Cause and Prejudice Standards of Law*

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray*, 477 U.S. at 488. To show "prejudice," a petitioner generally bears "the burden of showing not merely that the errors [in his proceeding] constituted a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

Cause for the default may exist as a result of ineffective assistance of counsel. For example, the failure on appeal to raise a meritorious claim of trial error may render that claim procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) ("[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice."). However, for ineffective assistance of direct appeal counsel ("IADAC") to serve as cause to excuse a default, that IADAC claim must

**MEMORANDUM DECISION AND ORDER - 22**

itself have been separately presented to the state appellate courts. *Id.* at 451 ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted.") If the ineffective assistance asserted as cause was not fairly presented to the state courts, a petitioner must show that an excuse for that separate default exists, as well.

A petitioner does not have a federal constitutional right to the effective assistance of counsel during state postconviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551, 554 (1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of counsel during a postconviction action cannot serve as a basis for cause to excuse a procedural default. *Coleman*, 501 U.S. at 752.

*Martinez v. Ryan*, 132 S. Ct. 1309 (2012), worked a "remarkable" equitable change in the law governing procedurally defaulted ineffective assistance of counsel ("IAC") claims, *Lopez v Ryan*, 678 F.3d 1131, 1136 (9th Cir. 2012). *Martinez* altered the long-standing prohibition of *Coleman v. Thompson*, 501 U.S. 722 (1991), that ineffective assistance of postconviction review ("PCR") counsel could not be used to excuse the procedural default of a claim. In effect, *Martinez* created the potential for an exception to the overall ban on new evidence in § 2254 actions that was pronounced in *Pinholster*, 131 S. Ct. 1388 (2011) (interpreting the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)). *Martinez* makes it possible for procedurally defaulted ineffective assistance of trial counsel claims to be heard de novo, with new supporting evidence, on federal habeas corpus review. *See Dickens v. Ryan*, 740 F.3d at 1320 ("We reject any

**MEMORANDUM DECISION AND ORDER - 23**

argument that *Pinholster* bars the federal district court's ability to consider Dickens's 'new' IAC claim. . . . *Pinholster* says nothing about whether a court may consider a 'new' claim, based on 'new' evidence not previously presented to the state courts."). The Ninth Circuit has concluded that *Martinez*—which addressed underlying claims of ineffective assistance of trial counsel ("IATC")—can also apply to claims of ineffective assistance of direct appeal counsel ("IADAC"). *Nguyen v. Curry*, 736 F.3d 1287, 1293-94 (9th Cir. 2013). The *Martinez* exception applies only to claims that are exhausted *and* procedurally defaulted.

In *Trevino v. Thaler*, the Supreme Court described and clarified the *Martinez* cause and prejudice test as consisting of four necessary prongs: (1) the underlying claim of ineffective assistance of counsel must be a "substantial" claim; (2) the "cause" for the procedural default consists of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" collateral review proceeding where the ineffective assistance of trial counsel claim could have been brought; and (4) state law requires that an ineffective assistance of counsel claim be raised in an initial-review collateral proceeding, or by "design and operation" such claims must be raised that way, rather than on direct appeal. 133 S. Ct. 1911, 1918, 1921 (2013).

The failure to meet any of these four prongs means that the *Martinez* exception is unavailable to excuse the procedural default of a claim. *See Martinez*, 132 S. Ct. at 1319.

**MEMORANDUM DECISION AND ORDER - 24**

i.        First Prong of *Martinez*: Substantiality of Underlying IAC Claim

To be entitled to application of the *Martinez* exception, a petitioner must first bring forward facts demonstrating that his ineffective assistance of counsel claim is substantial. The United States Supreme Court has defined "substantial" as a claim that "has some merit." *Martinez*, 132 S. Ct. at 1318 (comparing the standard for certificates of appealability from *Miller–El v. Cockrell*, 537 U.S. 322 (2003)). Stated inversely, a claim is "*in*substantial" if "it does not have any merit or . . . is wholly without factual support." *Id.* at 1319.

Determining whether an IAC claim is substantial requires a federal court to examine the claim under *Strickland*, 466 U.S. 668 (1984). The *Strickland* standards for determining deficient performance and prejudice, are, of course, the standards for an eventual review of the merits of the underlying IAC claim. The question whether an IAC claim is substantial under *Martinez* is not the same as a merits review; rather, it is more akin to a preliminary review of a *Strickland* claim for purposes of determining whether a certificate of appealability should issue. *See Martinez*, 132 S. Ct. at 1318-19. Therefore, a court may conclude that a claim is substantial when a petitioner has shown that resolution of the merits of the *Strickland* claim would be "debatable amongst jurists of reason" or that the issues presented are "adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (internal quotation marks omitted). Thus, to determine whether a claim is substantial, *Martinez* requires the district court to *review* but not *determine* whether trial or appellate counsel's acts or omissions resulted in deficient performance

**MEMORANDUM DECISION AND ORDER - 25**

and in a reasonable probability of prejudice, and to *determine* only whether resolution of the merits of the IAC claim would be debatable among jurists of reason and whether the issues are deserving enough to encourage further pursuit of them.

ii. Second Prong of *Martinez*: Ineffective Assistance of PCR Counsel

In addition to showing that the underlying IAC claim is substantial, a petitioner seeking to invoke the *Martinez* exception must also show either that he had no counsel on initial postconviction review, or that his PCR counsel was "ineffective under the standards of *Strickland*." 132 S. Ct. at 1318. Again, "ineffectiveness" is a term defined by *Strickland* as (1) deficient performance and (2) a reasonable probability of prejudice caused by the deficient performance. 466 U.S. at 694, 700.

a) *Deficient Performance of PCR Counsel*

Not just any error or omission of PCR counsel will be deemed "deficient performance" that will satisfy *Martinez.* If the PCR "attorney in the initial-review collateral proceeding did not perform below constitutional standards," the PCR attorney's performance does not constitute "cause." *Martinez*, 132 S. Ct. at 1319. The *Strickland* standards for analyzing deficient performance set forth above apply with equal force to PCR counsel in the context of a *Martinez* argument. Importantly, PCR counsel "is not necessarily ineffective for failing to raise even a nonfrivolous claim." *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). If PCR counsel's performance is deficient, then the court must consider whether that performance was prejudicial under *Strickland*. *Clabourne v. Ryan*, 745 F.3d 362, 377 (9th Cir. 2014) (petition for reh'g and reh'g en

**MEMORANDUM DECISION AND ORDER - 26**

banc pending), *called into question on other grounds by McKinney v. Ryan*, ___ F.3d ___, 2015 WL 9466506 (9th Cir. Dec. 29, 2015) (en banc).

> b)   *Prejudice from PCR Counsel's Performance*

As to the prejudice aspect of the second *Martinez* prong, a petitioner must show a reasonable probability that, if PCR counsel had not performed deficiently, the result of the postconviction proceedings would have been different. *Id.* (cumulating all opinions from *Detrich v. Ryan*, 740 F.3d 1237 (9th Cir. 2013)). That determination "is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective." *Id.* at 377-78.[7]

> iii.   <u>Third Prong of *Martinez*: Initial State Collateral Review Proceeding</u>

The third prong of the *Martinez* test is that the state collateral review proceeding in which the underlying IAC claim was defaulted must have been the "initial" post-conviction review proceeding where the IAC claim could have been raised. *Trevino*, 133 S. Ct. at 1918. The *Martinez* exception "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance." *Martinez*, 132 S. Ct. at 1320. In other words, the post-conviction proceeding must have been "the equivalent of a prisoner's direct appeal" for the IAC

---

[7]   The inquiries involved in the first and second *Martinez* prongs will, at times, collapse into one. *Clabourne*, 745 F.3d at 382 ("Under the circumstances of this case, if [the petitioner] succeeds in demonstrating that he was prejudiced by the failure of his post-conviction counsel, he will necessarily have established that there is at least 'some merit' to his claim that he suffered ineffective assistance of trial counsel at resentencing."). The Court may address either inquiry first, and the resolution of one prong may obviate the need to address the other. *See Martinez*, 132 S. Ct. at 1319 ("When faced with the question whether there is cause for an apparent default, a State may answer that the ineffective-assistance-of-trial-counsel claim is insubstantial, i.e., it does not have any merit or that it is wholly without factual support, or that the attorney in the initial-review collateral proceeding did not perform below constitutional standards.").

**MEMORANDUM DECISION AND ORDER - 27**

claim. *Martinez*, 132 S. Ct. at 1317. A petitioner may not use as cause attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." 132 S. Ct. at 1320.

iv.     Fourth Prong of *Martinez*: State Law Treatment of IAC Claims

The fourth prong of the *Martinez* analysis is that state law must require (by law or by reason of design and operation) that an ineffective assistance of trial counsel or appellate counsel claim be raised in an initial-review collateral proceeding. *Trevino*, 133 S. Ct. at 1918, 1921. Therefore, *Martinez* applies in Idaho where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992) (recognizing that in Idaho the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," though in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record").

**B.     Martinez *Analysis of Claim 2***

The only assertion of cause and prejudice that Petitioner makes is his allegation that his initial postconviction counsel was ineffective in failing to include Claim 2—that trial counsel was ineffective for failing to preserve the Rule 404(b) issue by making an

offer of proof—in the initial postconviction petition. (Dkt. 1 at 4.) This is a *Martinez* cause and prejudice argument.

Inexplicably, Respondent chose not to respond to Petitioner's argument that postconviction counsel was ineffective under *Martinez*. (*See generally* Dkt. 20.) However, Respondent has argued that the underlying IATC claim regarding the Rule 404(b) issue fails on the merits, which the Court has construed not only as a merits argument, but also as a contention that the underlying IATC claim is insubstantial. (*See id.* at 28-33.) The Court has determined that Claim 2 is not substantial.

In a previous case involving the *Martinez* exception, Judge Winmill considered the substantiality of an IATC claim based on counsel's failure to move to exclude reference to prior sexual misconduct with children. *Veenstra v. Smith*, No. 1:11-cv-00632-BLW, Dkt. 56, 2014 WL 1270626 (D. Idaho March 26, 2014). Judge Winmill concluded that the IATC claim was insubstantial "because, at the time of [Veenstra's] trial, it was virtually impossible to get such evidence excluded in child sexual abuse cases":

> For many years, Idaho courts had routinely permitted the admission of previous allegations or convictions of sexual molestation under Idaho Rule of Evidence 404(b), which prohibits the admission of evidence of prior acts to prove action in conformity with character, but allows for the admission of such evidence for other purposes. In *State v. Moore*, 819 P.2d 1143, 1145 (Idaho 1991), the Idaho Supreme Court upheld the admission of prior, uncharged child sexual abuse despite Rule 404(b)'s general rule that "evidence of other criminal acts or offenses is inadmissible to prove the character of a person in order to show that he committed the crime for which he is on trial." The court held that the evidence of prior sexual misconduct was admissible for another purpose—to bolster the credibility and provide

corroboration of the victim's testimony to show that the defendant had a common scheme or plan. *Id.* at 1145-46.

The state supreme court applied *Moore* in *State v. Tolman,* where the court held that in a child molestation case, "beyond any other, the defendant's plea of innocence challenges the credibility of the alleged victim. The challenge inheres in the very nature of the context and usually demands an answer long before the prosecution's turn for rebuttal. A minimal defense, even when the defendant elects not to testify, demands that the alleged victim be accused of falsehood, spite, or delusion." 828 P.2d 1304, 1310 (Idaho 1992). Therefore, to counter a defendant's not guilty plea, which inherently challenges the credibility of the alleged victim in a child sexual abuse case, Idaho courts allowed prior sexual misconduct evidence to help the jury "compare patterns and methods, details and generalities, consistencies and discrepancies, and thereby [make] a more meaningful and accurate assessment of the parties' credibility." (*Id.*)

*Moore* and *Tolman* led Idaho courts to treat child sex abuse cases differently from other types of cases where evidence of prior bad acts would clearly be inadmissible under Rule 404(b). As the Idaho Supreme Court later recognized, evidence of previous child molestation charges was " 'held to have been properly admitted so often that it seem[ed] to constitute a special exception to the character evidence prohibition.'" *Grist,* 205 P.3d at 1187 (quoting D. Craig Lewis, *Idaho Trial Handbook,* 2d ed., § 13:1 (2005)).

It was not until the 2009 decision in *Grist v. State* that the Idaho Supreme Court scaled back the admissibility of prior child molestation allegations or convictions. Though the court "declined to overrule *Moore* and *Tolman* in their entirety," it held that "[a]ny decision from this Court or the Court of Appeals that suggests that evidence offered in a case involving an allegations of sexual misconduct with a child should be treated differently than any other type of case is no longer controlling authority in Idaho's courts." *Grist,* 205 P.3d at 1187. The court recognized that the "theoretical underpinning of the admissibility of uncharged misconduct for purposes of 'corroboration' as articulated in *Moore* is indistinguishable from admitting such evidence based upon

**MEMORANDUM DECISION AND ORDER - 30**

> the accused's propensity to engage in such behavior based
> upon his or her past behavior." *Id.* at 1190. After *Grist,* Idaho
> courts may no longer admit evidence of prior sexual
> misconduct allegations when the probative value of that
> evidence "is entirely dependent upon its tendency to
> demonstrate the defendant's propensity to engage in such
> behavior." *Id.*

*Id.* at *15-16. Judge Winmill determined that reasonable jurists could not conclude that

Veenstra's trial counsel was ineffective for failing to anticipate the Idaho Supreme

Court's decision in *Grist*. *Id*. at *16.

The Court finds Judge Winmill's analysis persuasive. Like the petitioner in

*Veenstra*, Petitioner's trial took place before the Idaho Supreme Court decided *Grist*.

Counsel does not render ineffective assistance simply by failing "to anticipate changes in

the law." *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009) (internal quotation

marks omitted). Further, aside from the fact that *Grist* had not been decided at the time of

Petitioner's trial, Petitioner's defense counsel argued vigorously *against* the rebuttal

admission of the other victims' testimony and, therefore, did not perform deficiently.

Finally, the trial court held that the previous victims' testimony could be admitted

only if Petitioner took the stand and denied the charges against him—the court did not

allow the prosecution to present the Rule 404(b) evidence in its case-in-chief. Petitioner

has simply not established that, had the Rule 404(b) evidence been excluded for all

purposes, he actually would have chosen to testify on his own behalf. Even without the

Rule 404(b) evidence, Petitioner had two previous convictions that would have come in

**MEMORANDUM DECISION AND ORDER - 31**

under Idaho Rule of Evidence 609,[8] and there is no credible evidence that Petitioner would have risked cross-examination on these convictions by taking the stand. For these reasons, Petitioner's claim that trial counsel rendered ineffective assistance with respect to the Rule 404(b) issue is not substantial, and Petitioner has not established *Martinez* cause and prejudice to excuse the default of Claim 2.

### 4. Petitioner Is Not Entitled to the Application of the Miscarriage of Justice Exception to Procedural Default

The Court now addresses Petitioner's allegation that he is actually innocent. If a petitioner cannot show cause and prejudice for his procedural default, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice," which means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. at 496. Actual innocence in this context "means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998).

---

[8]     Rule 609 provides as follows:

> For the purpose of attacking the credibility of a witness, evidence of the fact that the witness has been convicted of a felony and the nature of the felony shall be admitted if elicited from the witness or established by public record, but only if the court determines in a hearing outside the presence of the jury that the fact of the prior conviction or the nature of the prior conviction, or both, are relevant to the credibility of the witness and that the probative value of admitting this evidence outweighs its prejudicial effect to the party offering the witness.

    The trial court concluded that, if Petitioner testified, his prior felony convictions for fraud and grand theft would be admissible under Rule 609 to impeach Petitioner as to his credibility. (State's Lodging A-3 at 143.)

**MEMORANDUM DECISION AND ORDER - 32**

In asserting actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. A procedurally defaulted claim may be heard under the miscarriage of justice exception only if "in light of all of the evidence, 'it is more likely than not that no reasonable juror would have found [Petitioner] guilty beyond a reasonable doubt.'" *United States v. Avery*, 719 F.3d 1080, 1083 (9th Cir. 2013) (quoting *Schlup*, 513 U.S. at 327). Stated another way, it must be more likely than not that *every* reasonable juror would vote to acquit.

This is an extremely demanding standard that "permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329. Although "habeas petitioners who assert convincing actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a court

"'may consider how the timing of the submission and the likely credibility of a petitioner's affiants bear on the probable reliability of evidence of actual innocence.'" *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1935 (quoting *Schlup*, 513 U.S. at 332) (alterations omitted).

Petitioner has not met the extraordinarily high burden of showing that he is actually innocent. Petitioner has not provided new, reliable evidence that would allow the Court to conclude that every reasonable juror would vote to acquit him of the lewd conduct charge. Petitioner's self-serving protestations are insufficient. *See Schlup*, 513 U.S. at 324. Therefore, Petitioner has not established that he is entitled to the application of the miscarriage of justice exception to procedural default.

## CONCLUSION

Claim 1 of the Petition must be denied on the merits, and Claim 3 is noncognizable on federal habeas review. Petitioner's remaining claims—Claims 2, 4, and 5—are procedurally defaulted, and Petitioner has not shown cause and prejudice, or actual innocence, to excuse that default. Therefore, this action will be dismissed with prejudice.

## ORDER

**IT IS ORDERED:**

1.  The Petition for Writ of Habeas Corpus (Dkt. 1) is DISMISSED IN PART and DENIED IN PART, and this entire action is DISMISSED with prejudice.

**MEMORANDUM DECISION AND ORDER - 34**

2.      Petitioner's Motion for an Order for Release (Dkt. 25) is DENIED.

3.      The Court does not find its resolution of this habeas matter to be reasonably

debatable, and a certificate of appealability will not issue. *See* 28 U.S.C.

§ 2253(c); Habeas Rule 11. If Petitioner wishes to appeal, he must file a

timely notice of appeal with the Clerk of Court. Petitioner may seek a

certificate of appealability from the Ninth Circuit by filing a request in that

court.

DATED: February 3, 2016

Edward J. Lodge
United States District Judge

**MEMORANDUM DECISION AND ORDER - 35**